**PETERSON WATTS LAW GROUP, LLP**
GLENN W. PETERSON, ESQ. (SBN 126173)
2267 Lava Ridge Court, Suite 210
Roseville, CA 95661
Telephone No: (916) 780-8222
Fax No: (916) 780-8775

Attorneys for Plaintiff
VP Racing Fuels, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VP RACING FUELS, INC., a Texas corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>KYLE MOOSE, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES FOR MISAPPROPRIATION OF TRADE SECRETS UNDER DTSA (18 U.S.C. § 1836 *et seq.*); MISAPPROPRIATION OF TRADE SECRETS UNDER CUTSA (CAL. CIV. CODE § 3426.1 *et seq.*); BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY; VIOLATION OF CAL. PENAL CODE § 502**<br><br>JURY DEMAND |

Plaintiff VP Racing Fuels, Inc. ("Plaintiff" or "VP") submits the following Complaint against Defendant Kyle Moose ("Defendant" or "Moose").

## **INTRODUCTION**

Defendant is a former fiduciary employee, hired in June 2014, and employed by VP in a top operational and sales position at VP's facilities in Southern California. When he resigned in April 2018, he was VP's Regional Manager-Western Division and had complete access to and control over VP's confidential and proprietary information, including valuable trade secret information. He was duty-bound both in law and in contract to protect the confidentiality of such information during and after his employment.

After resigning his position at VP in 2018, Defendant went to work for a (then) distributor of VP, which later became VP's direct competitor (M.O. Dion & Sons ["Dion"]) commencing in approximately December 2018.  VP recently discovered that, while still supporting himself with VP paychecks, Defendant abandoned his duties to VP to focus his efforts on facilitating Dion's direct competition against VP.  Critical to those plans was the theft of VP's trade secret information as described in greater detail below.

## THE PARTIES

1. VP Racing Fuels, Inc. is a corporation organized under the laws of Texas with its principal place of busines in San Antonio, Texas.

2. Upon information and belief, Kyle Moose ("Defendant" or "Moose") is an individual residing in Riverside, California.

3. Defendants Does 1 through 10, inclusive, are sued under these fictitious names because Plaintiff is presently ignorant of their true names and capacities.  Plaintiff will seek to amend this Complaint to set forth their true names and capacities when ascertained.  Plaintiff is informed and believes, and on that basis alleges that each of these fictitiously-named defendants is responsible in some manner for the occurrences herein alleged in that Plaintiff's damages as herein alleged were proximately caused by such defendants or, alternatively, said defendants aided and abetted the wrongdoing complained of, or have possessed, used or improperly benefitted from the misappropriation of Plaintiff's trade secrets, with knowledge that Moose was under a duty to maintain the confidentiality of same.  Allegations herein applicable to one or more named defendant or categorically "Defendants" are also applicable to and shall include Does 1 through 10, inclusive, unless specifically averred otherwise.

4. In doing the acts herein alleged, unless otherwise stated, each of the defendants, including those fictitiously-named, acted as the alter ego, agent, representative or co-conspirator of each of the others, and in so doing, was acting within the course and scope of such agency, representation or conspiracy.  Alternatively, each of the defendants is vicariously liable for the other defendants' misconduct herein alleged by ratification and acceptance of benefits from same.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over VP's claims under the DTSA pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c), and the Court possesses supplemental jurisdiction over VP's state-law claims under 28 U.S.C. § 1367(a)

6. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. VP is a citizen of the state of Texas, and Defendant is a citizen of the state of California.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 139l(b)(l) & (2) because Defendant is a resident of the state of California and resides in this judicial district, and because a substantial part of the events or omissions giving rise to VP's claims occurred in this judicial district and, in particular, Riverside County.

## GENERAL ALLEGATIONS

8. Defendant was hired as a Regional Manager of VP's Western Division in June 2014. He was employed pursuant to a written contract, a copy of which is attached marked Exhibit "A" ("Employment Agreement"). The Employment Agreement protected VP's confidential, proprietary and competitively sensitive information, including the identity of Employer's customers, their prior purchasing and payment histories, buying procedures, relationships with track and racers, pricing information, and more. Paragraph 4.1 of the Employment provides:

> 4. **Confidentiality of Trade Secrets and Records**
>
> 4.1 Employee hereby acknowledges that he will have knowledge of and access to Employer's competitively sensitive Trade Secrets including, but not limited to the following: the identity of Employer's customers, the prior purchasing and payment histories of customers, the buying procedures of customers, the present and projected relationships with series, tracks and racers, the prices at which Employer obtains goods or offers goods and services for sale, the processes for manufacture, packaging and shipping of Employer's products, and regulatory and compliance issues of Employer. Employee agrees that all such information learned by Employee on or after the date of employment shall be deemed confidential. Information shall, for the purposes of this Agreement, be considered to be confidential if not known by the trade generally, even though such information has been disclosed to one or more third parties pursuant to distribution agreements, contracts, or other agreements entered into by Employer. All information described in this paragraph 4.1 is collectively referred to herein as "Trade Secrets."

9. The Employment Agreement forbade Defendant from copying the Employer's Property and obligated him to return all such information to VP upon termination of his employment:

> 4.3 Employee further acknowledges that all memoranda, notes, records or any other documents, including processes, manuals, evaluations, assessments, customer lists and other confidential customer information made or compiled by Employee or made available to Employee on or after the date of employment, which concern any process, method, or product used, developed, investigated, or otherwise considered by Employer, or any Trade Secret, shall constitute the property of Employer (the "Employer's Property"), were made for the benefit of Employer, and Employee has no claim or interest in or to any of Employer's Property. All of Employer's Property shall be delivered to Employer by Employee upon termination of his employment or at any other time upon the request of Employer, and shall not be disclosed by Employee to any third party. Employee is prohibited from copying, by hand or machine, any of Employer's Property without the specific prior written consent of Employer.

10. Pursuant to the Employment Agreement, Defendant also acknowledged certain property to be the exclusive property of VP as his employer, including trade secrets, discoveries, improvements and other intangibles defined as "Work Product" in section 5 of the agreement, and further agreed to protect VP's trade secret information from disclosure to competitors or to the general public and to report any unauthorized disclosures or uses of such information to VP (see section 7).

11. In addition to the Employment Agreement, Defendant also agreed in writing to abide by the provisions of VP's Employee Handbook, as well as the policies of the company. His written acknowledgement dated June 2, 2014 is attached hereto marked Exhibit "B."

12. On June 9, 2014, Defendant also executed an "Employee Agreement Concerning the Use of Company-Owned Cell Phones and Computers," attached as Exhibit "C" hereto. By way of this agreement, he acknowledged that text messages and emails sent or received on these devices were the exclusive property of VP.

13. Defendant resigned his employment with VP on April 16, 2018. Subsequently, Plaintiff discovered that, prior to his separation of employment with VP, Defendant misappropriated a plethora of confidential, trade secret information through a series of over 130 electronic transmissions sent from his VP accounts/devices to his personal accounts/devices. These transmissions included valuable confidential and trade contact information of VP clientele, vendors, distributors, engine builders, and magazine editors. Most of the confidential contact information is

not available from publicly available sources and was the product of cultivation and development efforts over the course of many years. This information had economic value to VP, and it would have value to VP competitors due to its confidential nature.

14. VP alleges on information and belief that Defendant has misappropriated and used this information for wrongful purposes, including acts to benefit VP's direct competitor and other acts of unfair competition and that VP has suffered economic injury as a result.

## FIRST CAUSE OF ACTION
**(Misappropriation of Trade Secrets Under the DTSA, 18 U.S.C. §1836 *et seq*.)**

15. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 14 as if set forth fully here.

16. VP owns and possesses certain confidential, proprietary and trade secret information, including, but not limited to, customer lists, pricing data, and strategic plans.

17. This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and ordered in, interstate commerce.

18. VP has taken reasonable measures to keep such information secret and confidential by, among other things, limiting access to its trade secret information, guarding electronic access points to the information, and implementing employment policies that require confidentiality.

19. This confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to other persons or businesses who could obtain economic value from its disclosure or use.

20. Defendant misappropriated VP's trade secret information in the improper and unlawful manner as alleged herein. He misappropriated the trade secret information by secretly e-mailing and/or texting documents containing the trade secret information to himself in the run-up to his resignation. VP alleges on information and belief that Defendant further misappropriated the trade secret information by using and disclosing it in order to facilitate a business in direct competition with VP, M.O. Dion & Sons ("Dion"), for the purpose of calling on VP's customers and vendors. Dion, in turn, misappropriated the trade secret information by acquiring it with knowledge

or reason to know that it had been obtained by Defendant through improper means and using and disclosing it for purposes of directly competing against VP.

21. As a direct and proximate result of Defendant's conduct as alleged herein, VP has suffered damages in an amount to be proven at trial, but which exceeds $75,000.

22. Defendant's misappropriation of VP's trade secret information was willful and malicious, further entitling VP to recover exemplary damages and its attorneys' fees and costs.

23. On information and belief, if Defendant's conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to misappropriate, disclose, and use for their own benefit and to VP's detriment VP's trade secret information.

24. Because VP's remedy at law is inadequate, VP seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Defendant's misappropriation of VP's trade secret information.

**SECOND CAUSE OF ACTION**
**(Misappropriation of Trade Secrets Under the CUTSA, California Civil Code §3426.1 *et seq*.)**

25. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 24 as if set forth fully here.

26. Defendants are "Persons" under Cal. Civ. Code§ 3426.l(c). VP owns and possesses certain confidential, proprietary and trade secret information, including, but not limited to, customer lists, pricing data, and strategic plans.

27. VP has taken reasonable measures to keep such information secret and confidential by, among other things, limiting access to its trade secret information and implementing employment policies that require confidentiality.

28. This confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to other persons or businesses who could obtain economic value from its disclosure or use.

29. Defendant misappropriated VP's trade secret information in the improper and unlawful manner as alleged herein. He misappropriated the trade secret information by secretly e-mailing and/or texting documents containing the trade secret information to himself in the run-up to his resignation. VP alleges on information and belief that Defendant further misappropriated the trade secret information by using and disclosing it in order to facilitate a business in direct competition with VP (Dion) for the purpose of calling on VP's customers and vendors. Dion, in turn, misappropriated the trade secret information by acquiring it with knowledge or reason to know that it had been obtained by Defendant through improper means and using and disclosing it for purposes of directly competing against VP.

30. As a direct and proximate result of Defendant's conduct as alleged herein, VP has suffered damages in an amount to be proven at trial, but which exceeds $75,000.

31. Defendant's misappropriation of VP's trade secret information was willful and malicious, further entitling VP to recover exemplary damages and its attorneys' fees and costs.

32. On information and belief, if Defendant's conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to misappropriate, disclose, and use for their own benefit and to VP's detriment VP's trade secret information.

33. Because VP's remedy at law is inadequate, VP seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Defendant's misappropriation of VP's trade secret information.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty and Duty of Loyalty)

34. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 33 as if set forth fully here.

35. As a key management employee of VP, Defendant owed VP his undivided loyalty and was obligated to act with the utmost good faith, and in the best interest of VP. VP in turn, was entitled to place its trust and confidence in Defendant and to expect him to act with the utmost good

faith toward VP in carrying out the business of VP and its affiliated companies. VP reasonably relied on Defendant's loyalty and integrity and his faithful performance of his duties and responsibilities.

36. During the course of his employment with VP, Defendant breached his fiduciary duty and duty of loyalty by willfully misappropriating VP's confidential and trade secret information to directly compete against VP.

37. Defendant acted willfully and maliciously in breaching his fiduciary duty and duty of loyalty as described above.

38. By reason of the acts and conduct by Defendant, VP is entitled to compensatory and punitive damages in an amount to be determined at trial, but which exceeds $75,000.

39. As a result of his flagrant breaches of fiduciary duty and the duty of loyalty during his employment with VP, Defendant was a faithless employee and, as such, must forfeit all salary and other compensation and benefits they received during the period of their disloyalty, the exact amount to be determined at trial.

## FOURTH CAUSE OF ACTION
**(Violation of California Penal Code §502)**

40. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 39 as if set forth fully here.

41. The conduct by Defendant as alleged herein, violated California Penal Code § 502, in that he knowingly and without permission used VP's data, computers, computer system, and/or computer network wrongfully to control or obtain confidential and proprietary property and data.

42. The conduct by Defendant, as alleged herein, further violated California Penal Code § 502, in that he knowingly and without permission copied and/or made use of data and/or documents stored on VP's computers, computer system, and/or computer network.

43. The actions by Defendant, as alleged herein, were outside the scope of any prior authority he ever had to access, alter, damage, modify, obtain, control and/or use, or cause to be accessed, altered, damaged, modified, obtained, controlled and/or used, VP's computers, computer system, computer network and data, including its proprietary and confidential information.

44. As a direct and proximate result of the conduct by Defendant, VP suffered and continues to suffer damages, including, but not limited to, the costs of conducting an investigation into their conduct, the costs of conducting a damage assessment, and the cost of taking corrective action based on his conduct, such amounts to be determined at trial.

45. The actions Defendant has set forth above were taken willfully and intentionally, with oppression, fraud, and malice, and justifying an award to VP of exemplary and punitive damages.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

46. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 45 as if set forth fully here.

47. The Employment Agreement was a valid contract, and VP performed all obligations required of it to be performed.

48. The foregoing wrongful conduct of Defendant alleged above in paragraphs 13 through 33 was a breach of the Employment Agreement for which VP is entitled to recover monetary damages and injunctive relief, including but not limited to a decree of specific performance.

49. The Employment Agreement is sufficiently clear in prescribing the parties' obligations and enforcement of its terms is appropriate and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. On Counts One and Two against all Defendants:

(a) compensatory damages for actual loss and unjust enrichment caused by the misappropriation of VP's trade secret information, or, in the alternative, compensatory damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for Defendant's unauthorized disclosure or use of the trade secret information,

(b) exemplary damages as a multiplier of the amount of the compensatory damages awarded,

(c) an award of VP's reasonable attorneys' fees and costs, and

1  (d) a preliminary and permanent injunction (i) prohibiting Defendants from using, disclosing, or continuing to possess VP's trade secret information, (ii) ordering the return of VP's trade secret information, and (iii) prohibiting Defendants, their respective principals, agents, partners and affiliates, and all persons in active concert or participation with them, from doing business with or contacting any customer, prospective customer, or supplier of VP.

2. On Count Three against Defendant Moose, compensatory and punitive damages along with VP's reasonable attorneys' fees and costs, as well as an order requiring the disgorgement of all salary and other compensation and benefits received by him during the period of his disloyalty.

3. On Count Four against Defendants, compensatory and punitive damages along with VP's reasonable attorneys' fees and costs.

4. On Count Five against Defendant Moose, compensatory damages and injunctive relief, including without limitation a decree of specific performance, along with VP's reasonable attorneys' fees and costs as required by Section 8 therein.

4. On all counts, pre-judgment and post-judgment interest as well as such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY**: Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all claims and issues so triable.

DATED:  August 12, 2020                    **PETERSON WATTS LAW GROUP, LLP**

By:        /s/GLENN W. PETERSON
                GLENN W. PETERSON

Attorneys for Plaintiff
VP Racing Fuels, Inc.